[Cite as *In re A.O.*, 2026-Ohio-2581.]

IN THE OHIO COURT OF APPEALS
FIFTH APPELLATE DISTRICT
STARK COUNTY, OHIO

| | |
|---|---|
| IN THE MATTER OF: A.O. | Case No. 2026CA00035 |
| | <u>Opinion and Judgment Entry</u> |
| | Appeal from the Stark County Court of Common Pleas, Juvenile Division, Case No. 2024JCV01437 |
| | Judgment: Affirmed |
| | Date of Judgment Entry: July 2, 2026 |

**BEFORE:** Andrew J. King; William B. Hoffman; David M. Gormley, Judges

**APPEARANCES:** Brandon J. Waltenbaugh, Chris Eoff, Stark County Job and Family Services, for Appellee; Aaron Kovalchik, for Appellant.

*Hoffman, J.*

{¶1} Appellant-Mother R. K. appeals the decision of the Stark County Court of Common Pleas, Juvenile Division, terminating her parental rights and granting permanent custody of her minor child A.O. to Appellee Stark County Job and Family Services.

STATEMENT OF THE FACTS AND CASE

{¶2} Appellant R.K. is the mother of minor child A.O. (dob 1/14/2015), who is the subject of this appeal. She is also the mother of minor children S.K. (dob 2/24/14), X.J. (dob 4/27/2018), and T.K. (dob 3/25/2019). (T. at 17, 23-24).

{¶3} A.O. is the Father of A.O. His last known address is in Arizona. He is not a part of A.O.'s life and has not seen her since 2018. He was served notice by publication in this matter but did not appear or respond in any way.

{¶4} On December 12, 2024, Stark County Job and Family Services (SCJFS) filed Complaints alleging the dependency and/or neglect of the minor children. (T. at 17).

{¶5} The Complaint stated Appellant had lost custody of another child and S. K. in 2014 due to concerns for Appellant's mental health and domestic violence in the home. S.K. was ultimately returned to Appellant's custody at the conclusion of that case. Then in 2022, Summit County Children Services removed the children due to continued domestic violence in the home, lack of food in the home, and Appellant's mental health. The children were again ultimately returned to Appellant's custody at the conclusion of that case in May, 2024. SCJFS continued to receive reports about the family which included the children coming to school unkempt, T.K. smelling like urine, the conditions of the home, S.K. caring for the younger children, Appellant sleeping excessively and not making food for the children, Appellant's drug use, T.K.'s father having broken a window in the home, and Appellant not cooperating with non-court attempts to remedy the concerns by the agency. (T. at 29-30).

{¶6} On the same day, the trial court granted emergency temporary custody of the children to SCJFS via an ex-parte order. The trial court also ordered Appellant to complete a parenting assessment, a substance abuse assessment, and a drug screen within 48 hours, and comply with all recommendations.

{¶7} On December 13, 2024, the trial court held an emergency shelter care hearing finding probable cause existed for the issuance of the emergency orders, SCJFS had engaged in reasonable efforts to prevent the need for the removal of the children,

SCJFS had made intensive efforts to identify and engage appropriate and willing kinship caregivers for the children, and continued residence of the children with Appellant was contrary to the children's best interests. The trial court also approved and adopted the pre-adjudicatory orders requested by SCJFS and placed the children into the temporary custody of SCJFS. The trial court also found Appellant had an extensive history with SCJFS due to concerns for her mental health, domestic violence in the home, and lack of food in the home. Current concerns for the children included not being fed, being unkempt at school and the older child S.K., who was 10 years old at the time, providing for the younger children while Appellant slept.

{¶8} On February 27, 2025, the trial court found the children to be dependent and continued their placement in the temporary custody of SCJFS. The trial court reiterated its earlier concerns in addition to concerns Appellant tested positive for THC and cocaine and had refused to cooperate with non-court services. The trial court also placed the children into the temporary custody of SCJFS, approved and adopted the initial case plan, found SCJFS had engaged in reasonable efforts to prevent the need for the removal of the children, continued residence of the children with Appellant was contrary to the children's best interest, and SCJFS had made intensive efforts to identify and engage appropriate and willing kinship caregivers for the children. (T. at 17, 24, 29).

{¶9} On May 15, 2025, the Agency filed a motion for judicial determination of placement in a qualified residential treatment program.

{¶10} On May 15, 2025, the trial court granted the Agency's motion and a hearing was set for July 8, 2025.

{¶11} On July 1, 2025, a Guardian ad Litem report was filed.

{¶12} On July 8, 2025, the trial court held a dispositional review hearing. Mother appeared for the hearing. The court heard testimony from the case worker that Mother is not compliant in her case plan services. She had not yet completed a parenting evaluation, had failed to complete recommended substance abuse treatment and had been discharged, did not have housing, and was "more concerned with her phone than engaging with her children" during visitation. Father A.O. has not had any contact with the case worker. A.O. has concerning behaviors and is being moved to a more permanent placement. The trial court found there are compelling reasons to preclude a request for permanent custody to the Agency.

{¶13} The trial court maintained the status quo and scheduled a dispositional review hearing for November 7, 2025. The case plan, as filed, was approved and adopted by the Court.

{¶14} On November 6, 2025, SCJFS filed motions seeking permanent custody of three of the children, alleging, inter alia, the children could not be placed with Appellant within a reasonable amount of time and permanent custody was in the children's best interest. SCJFS also moved the trial court to change legal custody of S.K. to a kinship provider.

{¶15} On November 7, 2025, the trial court held a dispositional review hearing. Neither Mother nor Father appeared at the hearing. Evidence was presented in support of A.O.'s need to change placements due to her mental health. Mother is not compliant with her case plan services. The trial court found she had still not started her parenting assessment, was not compliant with substance abuse treatment or drug screening, did not have stable housing, and had not provided proof of income. Father has not been involved for the duration of this case. The trial court again found SCJFS had made reasonable

efforts to finalize the permanency plan in effect, and had made intensive efforts to identify and engage appropriate and willing kinship caregivers for the children. The court found there are no compelling reasons to preclude a request for permanent custody to the Agency. The court ordered Status Quo and scheduled a dispositional review hearing for May 5, 2026. The case plan, as filed was approved and adopted by the court.

{¶16} On January 20, 2026, the Guardians ad litem for the children filed their final reports. Attorney Amanda Krochka, the Guardian ad litem for S.K., A.O. and X.J., and Attorney Anastasia Dunigan, the Guardian ad litem for T.K., both recommended permanent custody of the children be granted to SCJFS, based on the best interests of the children. Both raised concerns regarding Appellant's lack of compliance with her case plan and the lack of safety care for the children.

{¶17} On January 26, 2026, a hearing was held on the pending motions for permanent custody. At the hearing, trial court heard the following evidence:

{¶18} Emily Smith testified she is employed by SCJFS and was the original ongoing caseworker assigned to the case. (T. at 23). She testified to the procedural history of the case and stated the children remained in the temporary custody of SCJFS throughout the case. (T. at 24-25). Caseworker Smith testified the children were removed from Appellant's custody partly due to her mental health, substance abuse, history of losing custody of her children, poor home conditions, domestic violence within the home, and the children attending school hungry and smelling of urine. (T. at 29-30). She stated SCJFS first created a case plan to remedy those concerns, and the case plan was approved and adopted by the trial court on several different occasions. (T. at 27-30). She stated Appellant was provided with a copy of the case plan and she discussed it with her. (T. at 35). Appellant's case plan ordered her to complete a parenting assessment, a drug and

alcohol assessment, comply with all resulting recommendations, and comply with random drug screening. (T. at 28). Appellant failed to complete a parenting assessment during Ms. Smith's assignment to the case. (T. at 28-29). Appellant further failed to complete any additional drug screens after testing positive for cocaine and THC on December 12, 2024. (T. at 28). Appellant was discharged from further recommended drug treatment as non-compliant. (T. at 28). Appellant was again recommended to engage in drug treatment but was still not actively participating. (T. at 28). Caseworker Smith testified Appellant only started doing services after SCJFS filed for permanent custody of the children. (T. at 29). She testified Appellant had not substantially complied with her case plan and had not remedied the risks resulting in the continued removal of the children. (T. at 30).

{¶19} Amy Craig also testified she is also employed by SCJFS and was assigned to the case as the ongoing caseworker starting October 2, 2025. (T. at 91). She testified Appellant started her parenting evaluation in November 2025, but canceled a later appointment, and had still not finished the evaluation by the time of the permanent custody hearing. (T. at 92). Caseworker Craig echoed Appellant had not substantially complied with case plan objectives and had failed to reduce the concerns causing the continued removal of the children. (T. at 92-93).

{¶20} Caseworker Craig further testified A.O. is placed in a foster home and is in counseling. (T. at 133). In 2022, Mother had an open case with Summit County with concerns of drug use, mental health issues, domestic violence children appearing at school hungry and smelling of urine. A.O. and her sister S.K. were removed from the home, and Mother was provided a case plan. Summit County returned the children in 2024, but those same concerns exist today.

**{¶21}** Ms. Craig testified X.J. is in a separate foster home. (T. at 133). T.K. is placed in a kinship home. (T. at 133). She stated the children are behind in schooling and have mental health issues. (T. at 133). T.K. completed a trauma evaluation during the case. (T. at 136). During the evaluation, T.K. stated he was afraid of his father and on one occasion said he was not safe with Appellant. (T. at 136). SCJFS explored appropriate relative placement for the children, but none was located. (T. at 133-134).

**{¶22}** Caseworker Craig testified Appellant's visits with her children would go well for the first hour but she "is at a loss of what to do" during the second hour. (T. at 134). Ms. Craig stated Appellant's visits with the children are "a handful" and Appellant does not redirect the children or keep them focused on planned activities. (T. at 134). She testified Appellant "seems checked out" during visits. (T. at 134). She testified the children were not "fully attached" to Appellant, and they are more attached to their caregivers. (T. at 138). Ultimately, Caseworker Craig testified the children have been in and out of foster care throughout their lives, and they need stability. (T. at 137). She testified the benefit of permanent custody would outweigh any detrimental impact of severing Appellant's parental rights. (T. at 137). She testified permanent custody was in the best interest of the children so they could "have a safe, stable, nurturing home to get their needs met, to feel safe and thrive ... to be successful adults". (T. at 137).

**{¶23}** Appellant Mother also has prior convictions for Assault and Obstructing Official Business.

**{¶24}** Attorney Krochka made a statement resting on her report. (T. at 141). Attorney Dunigan also made a statement. (T. at 141-142).

**{¶25}** Appellant offered no evidence.

**{¶26}** Following evidence, the trial court took the matter under advisement. (T. at 145).

**{¶27}** On February 3, 2026, the trial court issued its Judgment Entry along with Findings of Fact and Conclusions of Law granting permanent custody of X.J. to SCJFS and terminating the parental rights of Appellant Mother. Specifically, the trial court found despite reasonable efforts by SCJFS, A.O. could not and should not be placed with Appellant within a reasonable amount of time, A.O.'s Father had abandoned her, and the grant of permanent custody is in the child's best interests.

**{¶28}** It is from this decision Appellant now appeals, raising the following error for review:

ASSIGNMENT OF ERROR

I. THE JUDGMENT OF THE TRIAL COURT THAT THE BEST INTERESTS OF THE MINOR CHILDREN WOULD BE SERVED BY THE GRANTING OF PERMANENT CUSTODY WAS NOT PROVEN BY CLEAR AND CONVINCING EVIDENCE.

I.

**{¶29}** Upon review, we overrule Appellant's sole assignment of error.

**{¶30}** R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long term foster care.

**{¶31}** Following the hearing, R.C. 2151.414(B)(1) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.

**{¶32}** Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

**{¶33}** Because R.C. 2151.414 requires a juvenile court to find by clear and convincing evidence the statutory requirements are met, the sufficiency-of-the-evidence and/or manifest-weight-of-the-evidence standards of review are the proper appellate standards of review of a juvenile court's permanent-custody determination, as appropriate depending on the nature of the arguments which are presented by the parties. *In re Z.C.*, 2023-Ohio-4703, ¶ 11. "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and

which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Id. at ¶ 7, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶34} Mother did not assign error to the trial court's finding the Child cannot be placed with either parent within a reasonable period of time. Rather, she challenges the second prong of the analysis, which requires the juvenile court to determine by clear and convincing evidence it is in the best interest of the child to grant permanent custody to the agency pursuant to R.C. 2151.414(D). R.C. 2151.414(B)(1).

{¶35} In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D)(1) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (a) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (b) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (c) the custodial history of the child; (d) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody; and (e) whether any of the factors in division (E)(7) to (11) of R.C. 2151.414 apply in relation to the parents and child.

{¶36} At the permanent custody hearing herein, the case workers testified Appellant Mother has failed to complete any case plan recommendations and had not even completed a Parent Assessment. Mother tested positive for cocaine and THC in December 2024, refused all subsequent drug testing, and was unsuccessfully discharged from CommQuest. The case workers stated all of the same concerns which warranted

removal still exist, including concerns of drug use, mental health issues, domestic violence issues, and the children appearing at school hungry and smelling of urine.

{¶37} Ms. Craig testified A.O. is currently placed in a treatment foster home. She testified A.O. has developmental delays and mental health issues at this time. Ms. Craig stated she sent numerous letters to family members, but none were appropriate or willing to care for A.O. Caseworker Craig testified A.O. has a bond with Mother. She further testified Father is not in the child's life and there is no bond between A.O. and Father. She stated the benefit of permanency outweighs the harm of severing the parental bond. She further testified A.O. has been through a lot and in and out of foster care for years, and she needs stability, routine, consistent mental health treatment, and the knowledge she will have food and shelter. The case worker testified she believed A.O. would benefit from the granting of permanent custody and the ability to be adopted.

{¶38} Based on the foregoing, we find the trial court's finding permanent custody is in the best interest of the Child is supported by clear and convincing evidence and is not against the manifest weight of the evidence.

{¶39} Appellant's sole assignment of error is overruled.

{¶40}The judgment of the Stark County Court of Common Pleas, Juvenile Division, is affirmed.

{¶41} Costs to Appellant.


By: Hoffman, J.

King, P.J. and

Gormley, J. concur.